**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| **VERTIS NELSON,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, Inc., TRANS UNION LLC, and CREDIT ACCEPTANCE CORPORATION,**<br><br>**Defendants.** | **Civil Action No. 2:26-cv-13044**<br><br>**With Jury Demand Endorsed** |

# COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Vertis Nelson ("Plaintiff"), by and through counsel, for Plaintiff's Complaint against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, and Credit Acceptance Corporation, jointly, severally, and in solido, state as follows:

## I. INTRODUCTION

1. Three of the Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC are consumer reporting agencies ("CRAs") as defined by 15 U.S.C. § 1681a(f), and the other Defendant, Credit Acceptance Corporation, is a furnisher of consumer information. All Defendants have violated 15 U.S.C. § 1681 *et seq.*, known as the Fair Credit Reporting Act (the "FCRA"). Plaintiff seeks to recover from Defendants actual, statutory, and punitive damages, injunctive relief, legal fees, and expenses.

## II. PARTIES

2. Plaintiff a natural person residing in East Cleveland, Ohio is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c)**,** and is a victim of repeated false credit reporting.

**Made Defendants herein are**:

3. Upon information and belief, Defendant Equifax Information Services LLC, which may also hereinafter be referred to as "Equifax," "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is a Georgia limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its headquarters, 1550 Peachtree Street, Northwest, Atlanta, Georgia 30309. Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f). Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Equifax disburses such consumer reports to third parties of contract for monetary compensation.

4. Upon information and belief, Experian Information Solutions, Inc., which may also hereinafter be referred to as "Experian", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants,", does business in this judicial district and is an Ohio corporation with its principal place of business in California. Experian is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Experian regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Experian disburses such consumer reports to third parties of contract for monetary compensation.

5. Upon information and belief, Defendant Trans Union LLC, which may also

hereinafter be referred to as "Trans Union", "Defendant," "Defendants," "CRA," "CRA Defendant," or "CRA Defendants" is an Illinois limited liability company that does business in this judicial district and may be served by delivering a summons to its headquarters, 555 West Adams Street, Chicago, Illinois 60681. Trans Union is a nationwide CRA as defined by 15 U.S.C. § 1681a(f). Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing "consumer reports" as defined by 15 U.S.C. § 1681a(f) to third parties. Trans Union disburses such consumer reports to third parties of contract for monetary compensation.

6. Upon information and belief, Defendant Credit Acceptance Corporation, which may also hereinafter be referred to as "Credit Acceptance," "Defendant," "Defendants," "Furnisher Defendant," or "Furnisher Defendants," is a limited liability company that does substantial business in this judicial district and may be served by delivering a summons to its Legal Department at its headquarters, 25505 W 12 Mile Rd Southfield, MI 48034. Credit Acceptance is a "person," as defined by the FCRA, 15 U.S.C. § 1681a(b), and a furnisher of consumer credit information to consumer reporting agencies.

7. As used herein, "consumer reporting agency," or "CRA," means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports (commonly referred to as "credit reports") to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports and is an entity in the business of collecting, maintaining and disseminating information regarding the credit-worthiness of individuals. CRAs

specifically include, but are not limited to, Equifax, Experian, and Trans Union.

## III. JURISDICTION AND VENUE

8. Plaintiff respectfully asserts that this Honorable Court has jurisdiction in this case arising under federal law. 28 U.S.C. § 1331, 1334, and 1367 and 15 U.S.C. § 1681(p). Plaintiff also asserts actions under states' laws which may be brought within the supplemental jurisdiction of this Court and Plaintiff respectfully requests that this Honorable Court exercise supplemental jurisdiction over said claims. 28 U.S.C. § 1367.

9. Venue is proper in this District, because the CRA Defendants and Furnisher Defendant(s) transact business in this District. Furnisher Defendant's headquarters is located in this judicial district, a substantial part of the conduct complained of occurred in this district, and various actions made basis of Plaintiff's claims against Defendants occurred in the Eastern District of Michigan as further described. 28 U.S.C. § 1391.

10. Venue is further proper in this District, because the CRA Defendants entered into agreements with Furnisher Defendant in this judicial district to receive credit reporting data concerning Plaintiff. Any and all requests to investigate Plaintiff's disputes sent from the CRA Defendants as part of Defendants' reinvestigations were submitted to Furnisher Defendant's headquarters and investigated by Furnisher Defendant using its resources located at or closely connected to this judicial district. Furnisher Defendant managed Plaintiff's account(s) from this judicial district including communicating amounts owed and conducting numerous communications via phone and letter.

## IV. FACTUAL ALLEGATIONS

11. In or around July 2019, Plaintiff secured an auto loan with Credit Acceptance and

Credit Acceptance assigned account number 951186** (hereinafter the "Credit Acceptance loan" or "Credit Acceptance account" or "Credit Acceptance tradeline").

12. Due to unforeseen circumstances, Plaintiff needed to file for bankruptcy protection under Chapter 13 of Title 11.

13. On or around October 29, 2021, Plaintiff filed for bankruptcy protection under Chapter 13 of Title 11.

14. A redacted copy of Plaintiff's chapter 13 bankruptcy docket report for Plaintiff's bankruptcy case is attached hereto as Exhibit A.

15. As part of Plaintiff's chapter 13 bankruptcy, it was determined that Plaintiff was to continue to pay on the Credit Acceptance loan(s) even after Plaintiff filed for bankruptcy.

16. The Chapter 13 Plan specifically details that Plaintiff was to make the auto payments to the Bankruptcy Trustee, and the Trustee would disperse the payments to Credit Acceptance.

17. A redacted copy of Plaintiff's chapter 13 bankruptcy Plan is attached hereto as Exhibit B.

18. During Plaintiff's bankruptcy, Plaintiff timely completed all of the loan payments for the Credit Acceptance account(s). Plaintiff is the free and clear owner of the automobile that was the security interest of the Credit Acceptance account.

19. On November 26, 2025, the Plaintiff was discharged from Chapter 13 Bankruptcy.

20. A redacted copy of Plaintiff's chapter 13 Discharge Order is attached hereto as Exhibit C.

21. Sometime in April 2026, Plaintiff obtained Plaintiff's three-bureau credit report and noticed that the Equifax, Experian, and Trans Union credit report(s) were not accurate.

22. A redacted copy of Plaintiff's April 2026 tri-merge credit report is attached hereto as Exhibit D.

23. Within the Tri-Merge credit report, Plaintiff noticed that Equifax reported the following inaccuracies for Plaintiff's Credit Acceptance account.

24. The Credit Acceptance account was reporting a payment status of "Wage Earner Plan", an account rating of "Derogatory", a date of last payment of April 1, 2020, a date of last activity of April 1, 2020, a high balance of $0.00, and within the creditor remarks it was reporting the "Account involved in Chapter 13 debt adj. Auto included in Chapter 13".

25. This reporting is incorrect because Plaintiff completed all the required loan payments for the Credit Acceptance account, Plaintiff is the free and clear owner of the automobile that was the security interest of the Credit Acceptance account, and the current reporting is a significant misrepresentation of this fully paid and closed account.

26. The accurate reporting of the Credit Acceptance account would have been to report a payment status of "Current", an account rating of "Paid/Closed", a date of last activity as of the last payment date, a high balance of $13,759, and should have reported within the creditor remarks section "Auto closed or paid account/zero balance".

27. The current reporting of the Credit Acceptance account materially misleads lenders to believe Plaintiff surrendered the automobile that was/is the security interest of the Credit Acceptance account and converted the Credit Acceptance loan to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

28. The current reporting of the Credit Acceptance account was never an "historically accurate" way to report the Credit Acceptance account.

29. Within the Tri-Merge credit report, Plaintiff noticed that Experian reported the

following inaccuracies for Plaintiff's Credit Acceptance account.

30. The Credit Acceptance account was reporting a payment status of "Wage Earner Plan", an account rating of "Derogatory", no date of last payment, a date of last activity of October 1, 2021, and within the creditor remarks it was reporting the "Debt included in or discharged through Bankruptcy Chapter 13."

31. This reporting is incorrect because Plaintiff completed all the required loan payments for the Credit Acceptance account, Plaintiff is the free and clear owner of the automobile that was the security interest of the Credit Acceptance account, and the current reporting is a significant misrepresentation of this fully paid and closed account.

32. The accurate reporting of the Credit Acceptance account would have been to report a payment status of "Current", an account rating of "Paid/Closed", a date of last activity as of the last payment date, and should have reported within the creditor remarks section "Auto closed or paid account/zero balance".

33. The current reporting of the Credit Acceptance account materially misleads lenders to believe Plaintiff surrendered the automobile that was/is the security interest of the Credit Acceptance account and converted the Credit Acceptance loan to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

34. The current reporting of the Credit Acceptance account was never an "historically accurate" way to report the Credit Acceptance account.

35. Within the Tri-Merge credit report, Plaintiff noticed that Trans Union reported the following inaccuracies for Plaintiff's Credit Acceptance account.

36. The Credit Acceptance account was reporting a payment status of "Wage Earner Plan", an account rating of "Derogatory", a date of last payment of November 19, 2025, a date of

last activity of December 6, 2025, an account status of "Open", and within the creditor remarks it was reporting the "Chapter 13; wage earner plan account".

37. This reporting is incorrect because Plaintiff completed all the required loan payments for the Credit Acceptance account, Plaintiff is the free and clear owner of the automobile that was the security interest of the Credit Acceptance account, and the current reporting is a significant misrepresentation of this fully paid and closed account.

38. The accurate reporting of the Credit Acceptance account would have been to report a payment status of "Current", an account rating of "Paid/Closed", a date of last activity as of the last payment date, an account status of "Closed", and should have reported within the creditor remarks section "Auto closed or paid account/zero balance".

39. The current reporting of the Credit Acceptance account materially misleads lenders to believe Plaintiff surrendered the automobile that was/is the security interest of the Credit Acceptance account and converted the Credit Acceptance loan to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

40. The current reporting of the Credit Acceptance account was never an "historically accurate" way to report the Credit Acceptance account.

41. On or about May 19, 2026, Plaintiff sent direct disputes to the CRA Defendant(s) and requested that the CRAs investigate the reporting of the Credit Acceptance account and Plaintiff specifically addressed the above referenced issues with the reporting stated in the above Paragraphs. Plaintiff requested that under the FCRA, the CRAs conduct reasonable investigations and/or remedy the inaccuracies on Plaintiff's credit reports concerning the accounts.

42. Redacted copies of Plaintiff's unsigned dispute letters sent to CRAs are attached hereto as Exhibits E, F, and G.

43. Equifax responded to Plaintiff's dispute on June 10, 2026.

44. A redacted copy of Equifax's response is attached hereto as Exhibit H.

45. Plaintiff requested an updated consumer report to see if any changes were made on Plaintiff's Consumer Report.

46. A redacted copy of Plaintiff's updated tri-merge credit report is as Exhibit I.

47. Equifax's response and the updated Consumer Report showed that Equifax made none of the substantive changes Plaintiff requested in the direct dispute to Equifax and deleted the Credit Acceptance account without explanation or reasons for an outright deletion.

48. Equifax's response, or lack thereof, was not the result of a reasonable investigation into Plaintiff's dispute, and Equifax failed to remedy the inaccuracies within the Credit Acceptance account.

49. Upon the Plaintiff's request to Equifax to verify and correct the Credit Acceptance account, and in accordance with Equifax's standard procedures, as well as the FCRA, because Equifax ignored the evidence Plaintiff included with Plaintiff's dispute letter and unilaterally deleted the Credit Acceptance account from Plaintiff's Consumer Report.

50. Equifax seemingly saw the word "Bankruptcy" in Plaintiff's dispute letter and unilaterally decided to delete the Credit Acceptance account and not even attempt to contact the furnisher of credit information.

51. Equifax simply ignored Plaintiff's request to involve Plaintiff's lender for the Credit Acceptance account and did not evaluate or consider the actual status of these accounts and lazily deleted the Credit Acceptance account without any explanation.

52. Equifax's willful failure to involve Credit Acceptance in Plaintiff's FCRA dispute is a willful violation of the Fair Credit Reporting Act (FCRA) under § 1681i(a)(2). The FCRA

required Equifax to promptly notify Credit Acceptance of the dispute and provide all relevant information it received from Plaintiff for Credit Acceptance to investigate.

53. Equifax willfully decided to keep Plaintiff's dispute to themselves and deleted the Credit Acceptance account without perform any investigation at all.

54. Equifax's failure to investigate Plaintiff's dispute letter, its failure to include Credit Acceptance in the dispute process, and its willful actions have injured Plaintiff's credit standing.

55. In the alternative to the allegation that Equifax failed to contact Furnisher Defendant, it is alleged that Equifax did forward some notice of the dispute to the Furnisher Defendant, and the Furnisher Defendant failed to conduct a lawful investigation.

56. Furnisher Defendant knows how to report the Credit Acceptance account accurately, and their response to the CRA was willfully reckless.

57. Furnisher Defendant knows the current reporting of the Credit Acceptance account materially misleads lenders to believe Plaintiff surrendered the automobile that was the security interest of the Credit Acceptance account and converted the Credit Acceptance loan to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

58. Furnisher Defendant knows the current reporting of the Credit Acceptance account was never an "historically accurate" way to report the Credit Acceptance account.

59. Experian failed to respond to Plaintiff's dispute.

60. Plaintiff requested an updated consumer report to see if any changes were made on Plaintiff's Consumer Report. *See* Exhibit I.

61. The updated Consumer Report showed that Experian made none of the substantive changes Plaintiff requested in the direct dispute to Experian and continued to report the Credit

Acceptance account inaccurately.

62. The Credit Acceptance account continued to report a payment status of "Wage Earner Plan", an account rating of "Derogatory", no date of last payment, a date of last activity of October 1, 2021, and within the creditor remarks it was reporting the "Debt included in or discharged through Bankruptcy Chapter 13." Additionally, there were no remarks that this account was disputed.

63. Experian's response, or lack thereof, was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Credit Acceptance account and gave no explanation as to why the Credit Acceptance account was still reporting inaccurately.

64. Plaintiff's inaccurate Experian consumer report was disseminated to third parties before and/or after the instant dispute.

65. The current reporting of the Credit Acceptance account materially misleads lenders to believe Plaintiff surrendered the automobile that was the security interest of the Credit Acceptance account and converted the Credit Acceptance loan to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

66. Experian chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Credit Acceptance account.

67. Upon the Plaintiff's request to Experian for verification and correction regarding the Credit Acceptance account, and in accordance with Experian's standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence, and did not make any attempt to verify the reporting of the Credit Acceptance account substantially or reasonably.

68. Experian has adopted the Metro 2 reporting standard, Experian deviated from the standard based on its conduct in this case, and by Experian deviating from the adopted standard, Experian injured Plaintiff's credit standing.

69. In the alternative, Experian failed to contact Furnisher Defendant, therefore, failed to perform any investigation at all.

70. In the alternative to the allegation that Experian failed to contact Furnisher Defendant, it is alleged that Experian did forward some notice of the dispute to the Furnisher Defendant, and the Furnisher Defendant failed to conduct a lawful investigation.

71. Furnisher Defendant knows how to report the Credit Acceptance account accurately, and their response to the CRA was willfully reckless.

72. Furnisher Defendant knows the current reporting of the Credit Acceptance account materially misleads lenders to believe Plaintiff surrendered the automobile that was the security interest of the Credit Acceptance account and converted the Credit Acceptance loan to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

73. Furnisher Defendant knows the current reporting of the Credit Acceptance account was never an "historically accurate" way to report the Credit Acceptance account.

74. Trans Union responded to Plaintiff's dispute on June 10, 2026.

75. A redacted copy of Trans Union's response is attached hereto as Exhibit J.

76. Plaintiff requested an updated consumer report to see if any changes were made on Plaintiff's Consumer Report. *See* Exhibit I.

77. Trans Union's response and the updated Consumer Report showed that Trans Union made none of the substantive changes Plaintiff requested in the direct dispute to Trans Union and continued to report the Credit Acceptance account inaccurately.

78. The Credit Acceptance account continued to report a payment status of "Wage Earner Plan", an account rating of "Derogatory", a date of last payment of November 19, 2025, a date of last activity of December 6, 2025, and within the creditor remarks it was reporting the "Chapter 13; wage earner plan account". Additionally, there were no remarks that this account was disputed.

79. Trans Union's response, or lack thereof, was not the result of a reasonable investigation into Plaintiff's dispute and failed to remedy the inaccuracies within the Credit Acceptance account and gave no explanation as to why the Credit Acceptance account was still reporting inaccurately.

80. Plaintiff's inaccurate Trans Union consumer report was disseminated to third parties before and/or after the instant dispute.

81. The current reporting of the Credit Acceptance account materially misleads lenders to believe Plaintiff surrendered the automobile that was the security interest of the Credit Acceptance account and converted the Credit Acceptance loan to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

82. Trans Union chose to "verify" false information from an unreliable source, failed to correct the inaccurate information, and continued to publish the inaccurate information regarding Plaintiff's Credit Acceptance account.

83. Upon the Plaintiff's request to Trans Union for verification and correction regarding the Credit Acceptance account, and in accordance with Trans Union's standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence, and did not make any attempt to verify the reporting of the Credit Acceptance account substantially or reasonably.

84. Trans Union has adopted the Metro 2 reporting standard, Trans Union deviated from the standard based on its conduct in this case, and by Trans Union deviating from the adopted standard, Trans Union injured Plaintiff's credit standing.

85. In the alternative, Trans Union failed to contact Furnisher Defendant, therefore, failed to perform any investigation at all.

86. In the alternative to the allegation that Trans Union failed to contact Furnisher Defendant, it is alleged that Trans Union did forward some notice of the dispute to the Furnisher Defendant, and the Furnisher Defendant failed to conduct a lawful investigation.

87. Furnisher Defendant knows how to report the Credit Acceptance account accurately, and their response to the CRA was willfully reckless.

88. Furnisher Defendant knows the current reporting of the Credit Acceptance account materially misleads lenders to believe Plaintiff surrendered the automobile that was the security interest of the Credit Acceptance account and converted the Credit Acceptance loan to an unsecured debt and discharged the debt by way of Plaintiff's chapter 13 bankruptcy.

89. Furnisher Defendant knows the current reporting of the Credit Acceptance account was never an "historically accurate" way to report the Credit Acceptance account.

## V. GROUNDS FOR RELIEF

### EQUIFAX'S VIOLATION OF THE FCRA
### (15 U.S.C. §1681e(b))

90. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

91. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable

procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

92. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

93. Equifax knew or should have known of Plaintiff's bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Equifax continued to prepare a patently false consumer report concerning Plaintiff.

94. Despite actual and implied knowledge that Plaintiff's credit report was and/or is not accurate, Equifax readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

95. After Equifax knew or should have known Plaintiff's bankruptcy status, history, and/or payment history were inaccurate for Plaintiff's Credit Acceptance tradeline(s), it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

96. As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit

reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit reports; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff has spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

97. Equifax's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

98. The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**EQUIFAX'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

99. The Plaintiff realleges and incorporates all paragraphs above as if fully set out

herein.

100. Equifax violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

101. As a result of Equifax's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit reports; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit scores may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff has spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of

self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

102. Equifax's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

103. The Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**EXPERIAN'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681e(b))**

104. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

105. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

106. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

107. Experian knew or should have known of Plaintiff's bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Experian continued to prepare a patently false consumer report concerning Plaintiff.

108. Despite actual and implied knowledge that Plaintiff's credit report was and/or is not accurate, Experian readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

109. After Experian knew or should have known Plaintiff's bankruptcy status, history, and/or payment history were inaccurate for Plaintiff's Credit Acceptance tradeline(s), it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

110. As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit reports; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff has spent considerable time, effort, and expense

attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

111. Experian's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

112. The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**EXPERIAN'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

113. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

114. Experian violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a

source it has reason to know is unreliable.

115. As a result of Experian's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit reports; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit scores may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

116. Experian's conduct, action, and inaction, were willful, rendering it liable for actual

or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

117. The Plaintiff is entitled to recover costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**TRANS UNION'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681e(b))**

118. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

119. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning the Plaintiff.

120. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b) (emphasis added).

121. Trans Union knew or should have known of Plaintiff's bankruptcy status, history, and/or payment history were reporting inaccurately, and yet, Trans Union continued to prepare a patently false consumer report concerning Plaintiff.

122. Despite actual and implied knowledge that Plaintiff's credit report was and/or is not accurate, Trans Union readily provided false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately Plaintiff's creditworthiness.

123. After Trans Union knew or should have known Plaintiff's bankruptcy status,

history, and/or payment history were inaccurate for Plaintiff's Credit Acceptance tradeline(s), it failed to make the corrections as would be required to attain "maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 168le(b).

124. As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit reports; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff has spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair

Plaintiff's credit in light of the damage done to it continuously by Defendant.

125. Trans Union's conduct, action, and inaction, were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 168ln. In the alternative, such conduct, action, and inaction were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

126. The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681o.

**TRANS UNION'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681i)**

127. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

128. Trans Union violated 15 U.S.C. § 1681i on multiple occasions by failing to update or correct inaccurate information in the Plaintiff's credit files after receiving actual notice of such inaccuracies, failing to conduct a lawful reinvestigation, failing to forward all relevant information to furnisher(s), failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit files, and relying upon verification from a source it has reason to know is unreliable.

129. As a result of Trans Union's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's abilities to finance goods; loss of credit, loss of the abilities to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional

distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit reports; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit scores may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff has spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

130. Trans Union's conduct, action, and inaction, were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, such conduct, action, and inaction were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

131. The Plaintiff is entitled to recover costs and attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 1681o.

**CREDIT ACCEPTANCE'S VIOLATION OF THE FCRA**
**(15 U.S.C. §1681s-2(b))**

132. The Plaintiff realleges and incorporates all paragraphs above as if fully set out herein.

133. Furnisher Defendant violated 15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon receiving notice of Plaintiff's dispute(s) from one or more consumer reporting agencies, and/or failing to appropriately report the results of their investigations, and/or failing to appropriately modify the information.

134. Furnisher Defendant further violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate the Plaintiff's disputes of the Credit Acceptance Tradeline(s), failing to accurately respond to the CRA Defendants, failing to correctly report results of an accurate investigation to every other consumer reporting agency, and failing to permanently and lawfully correct its own internal records to prevent the re-reporting of inaccurate information to the Credit Acceptance Tradeline(s) within the consumer reporting agencies reports.

135. As a result of Furnisher Defendant's conduct, action, and inaction, the Plaintiff suffered damages, including, but not limited to: loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit reports; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit scores may have impacted the interest

rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff has spent considerable time, effort, and expense attempting to force Defendant to comply with Defendant's statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendant; loss of self-esteem because of Defendant's continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; and the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendant.

136. Furnisher Defendant's conduct, action, and inaction, were willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

## VI. VICARIOUS LIABILITY/RESPONDEAT SUPERIOR

137. Plaintiff will be able to show, after reasonable discovery, that all actions at issue were taken by employees, agents, servants, or representatives, of any type, for Defendants, the principals, within the line and scope of such individuals' (or entities') express or implied authority, through employment, agency, or representation, which imputes liability to Defendants for all such actions under the doctrine of respondent superior and/or vicarious liability.

## VII. DAMAGES

138. Plaintiff respectfully request that this Honorable Court instruct the jury, as the trier of facts, that in addition to actual or compensatory damages, punitive or exemplary damages may

be awarded against the Defendants under the provisions of the FCRA and/or states' laws, including Michigan.

139. Plaintiff respectfully requests that this Honorable Court award Plaintiff's litigation expenses and other costs of litigation and reasonable attorney's fees incurred in this litigation, in accordance with the provisions of the FCRA and/or other laws.

140. The above and foregoing actions, inactions, and fault of Defendants, as to each and every claim, have proximately caused a wide variety of damages to Plaintiff.

141. Defendants performed perfunctory and essentially useless reinvestigations resulting in the verification of false reportings about the Plaintiff and has been a substantial factor in causing credit denials and other damages.

142. Plaintiff suffered a variety of damages, including economic and non-economic damages as prayed for herein.

143. Defendants have negligently and/or willfully violated various provisions of the FCRA and are thereby liable unto Plaintiff.

144. Defendants are liable unto Plaintiff for all actual, statutory, exemplary and punitive damages awarded in this case, as well as other demands and claims asserted herein including, but not limited to: out-of-pocket expenses; credit denials; loss in Plaintiff's ability to finance goods; loss of credit, loss of the ability to purchase and benefit from credit; emotional anguish, frustration, and annoyance from being deterred from applying for credit; mental anguish, humiliation, anger, frustration, annoyance, and embarrassment as a result of the publication of false information; lost credit capacity and decreased credit scores; damage to reputation; mental anguish, emotional distress, frustration, humiliation, and annoyance as a result of being burdened with a false credit reporting history; lost opportunities to obtain credit in the form of an unspecified

number of credit offers that Plaintiff did not receive because of the false and derogatory information contained in Plaintiff's credit reports; Plaintiff's lowered credit scores may have impacted the interest rates Plaintiff has on current loans; Plaintiff's lowered credit score may have impacted the interest rates Plaintiff received during this ordeal; Plaintiff's lowered credit score may have impacted the credit limits Plaintiff has on existing accounts; Plaintiff has spent considerable time, effort, and expense attempting to force Defendants to comply with Defendants' statutory obligations, including but not limited to reviewing information online, telephone calls, emails, writing letters, sending letters, and attempting to decipher letters, reports, and other instruments provided by Defendants; loss of self-esteem because of Defendants' continued persistence in painting Plaintiff in a false light both personally and financially; anxiety when considering seeking additional credit because Plaintiff believes Plaintiff will be forced to be subjected to the humiliation of having to explain the false and defamatory information; the costs and time Plaintiff has spent trying to repair Plaintiff's credit in light of the damage done to it continuously by Defendants; attorney's fees; court costs; and other assessments proper by law and any and all other applicable federal and state laws, together with legal interest thereon from date of judicial demand until paid.

**WHEREFORE PREMESIS CONSIDERED**, Plaintiff prays that this Honorable Court:

A. Enter Judgment in favor of Plaintiff and against Defendants Equifax Information Services LLC, Experian Information Solutions, Inc., Trans Union LLC, and Credit Acceptance Corporation, jointly, severally, and in solido, for all reasonable damages sustained by Plaintiff, including, but not limited to, actual damages, compensatory damages, out-of-pocket expenses, credit denials, costs and time of repairing Plaintiff's credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress,

mental anguish, and fear of personal and financial safety and security for Defendants' violations of the FCRA, applicable state law, and common law;

B. Find that the appropriate circumstances exist for an award of punitive damages to Plaintiff;

C. Award Plaintiff pre-judgment and post-judgment interest, as allowed by law;

D. Order that CRA Defendants, Equifax Information Services LLC, Experian Information Solutions, Inc., and Trans Union LLC, and Furnisher Defendant, Credit Acceptance Corporation work in conjunction, cooperatively, and/or individually to reinvestigate and correct the consumer report(s), credit report(s), data emanations, consumer histories, and credit histories of and concerning Plaintiff and/or any of Plaintiff's personal identifiers.

E. Grant such other and further relief, in law or equity, to which Plaintiff might show Plaintiff is justly entitled.

Date Filed: August 25, 2026

Respectfully submitted,

*/s/ Blake R. Bauer*

Blake R. Bauer
MN Bar Number 0396262
FCRA-TX@fieldslaw.com
FIELDS LAW FIRM
9999 Wayzata Blvd.
Minnetonka, Minnesota 55305
(612) 206-3489 (telephone)
(612) 370-4256 (fax)

***COUNSEL FOR PLAINTIFF***

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

August 25, 2026
Date

*/s/ Blake R. Bauer*
Blake R. Bauer